# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JEREMY RYAN CARD, on Behalf of Himself and on Behalf of Others Similarly Situated, § § § § | | |
| Plaintiff, § | | |
| § | CIVIL ACTION NO. 4:17-cv-00524 | |
| V. § § | | |
| QUALITY CABLE INSTALLERS, LLC, § NEEDHAM COMMUNICATIONS § AND MICHAEL LEE NEEDHAM § Defendants. § | | |

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release ("the Agreement") is made and entered into by and between Jeremy Ryan Card ("Card"), Emanuel Guerrero ("Guerrero"), and Gabriel Gonzalez ("Gonzalez") collectively as "Plaintiffs"), on the one hand, and Quality Cable Installers, LLC ("QCI" or "Defendant") (collectively as "the Parties"), on the other hand, on the date fully executed below.

## RECITALS

WHEREAS, on February 16, 2017, Card filed a Complaint under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA") against QCI in the United States District Court for the Southern District of Texas. On May 21, 2018 Card filed a First Amended Complaint under the FLSA against QCI in the United States District Court for the Southern District of Texas entitled *Jeremy Ryan Card, on behalf of himself and on behalf of others similarly situated v. Quality Cable Installers, LLC, Needham Communications, and Michael Lee Needham*, Case No. 4:17-cv-00524 ("the Lawsuit").

Page **1** of **12**

WHEREAS, Plaintiffs have asserted claims against QCI in the Lawsuit pursuant to the FLSA ("FLSA Claims");

WHEREAS, QCI has asserted multiple affirmative defenses and QCI denies all of Plaintiffs' FLSA Claims and denies that Plaintiffs are entitled to any recovery for any claim asserted, or any claims that could have been asserted, in the Lawsuit;

WHEREAS, there is a bona fide dispute regarding the hours worked by Plaintiffs and Plaintiffs' wages;

WHEREAS, the Parties, including Defendant QCI, may have additional non-FLSA claims against each other;

WHEREAS, the Parties have concluded that it is in their mutual best interests to negotiate a settlement and compromise of all disputes amongst them without admitting any liability to each other of any kind or nature whatsoever;

WHEREAS, recognizing the importance of judicial approval of the settlement of Plaintiffs' FLSA Claims, the parties intend herein to settle Plaintiffs' FLSA Claims and seek the Court's approval of this settlement solely with regard to Plaintiffs' FLSA claims;

WHEREAS, as a result of extensive negotiations, the undersigned parties have each determined independently, and after consultation with counsel of their respective choice, that it is desirable and beneficial for each of them to settle, compromise and resolve all claims and disputes in the manner and on the terms and conditions set forth herein;

WHEREAS, this Settlement Agreement and General Release is the Parties' full and final settlement of all claims between the Parties, specifically including but not limited to Plaintiffs' FLSA Claims; and

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby expressly acknowledged, the undersigned Plaintiffs and Defendant agree as follows:

1. **No Admission of Liability**. QCI enters into this Agreement expressly disavowing fault, liability and wrongdoing, liability at all times having been denied. This Agreement is in compromise of disputed claims between and among the Parties hereto. Defendant is entering into this Agreement solely to avoid the expense and inconvenience of further litigation, and not because any of Plaintiffs' claims has, have, or had any merit whatsoever. Nothing herein shall be construed as an admission by QCI, or by any of QCI's current or former employees or agents, of a breach of any duty, obligation, or contract, a violation of any right of Plaintiffs or of any other person, or a violation of any federal, state, or local statute, regulation, judicial doctrine, or other law. QCI specifically disclaims any liability to, any breach of any duty or obligation to, or any unlawful action against Plaintiffs or any other person. QCI also specifically denies any violations of any statute, regulation, judicial doctrine, or other law as alleged in the Lawsuit or otherwise.

2. **Consideration for Release of FLSA Claims**. For and in consideration of the promises and other consideration described in this Agreement, and provided that the Court approves this Agreement, QCI will pay to Plaintiffs the gross amount of thirty-five thousand dollars and no cents ($35,000.00), less applicable taxes and withholdings (the "Settlement Amount") as divided below after the Court approves this Agreement, in full and final settlement and satisfaction of Plaintiffs' FLSA Claims. The Settlement Amount will be paid by separate checks, issued simultaneously (the "Settlement Payments"), which will be sent to Plaintiffs' counsel, Gregg M. Rosenberg, for distribution within twenty (20) calendar days after 1)

Plaintiffs have filed an agreed stipulation of the dismissal with prejudice of Plaintiffs' claims against Quality Cable Installers, LLC, Needham Communications and Michael Lee Needham pursuant to Federal Rule Civil Procedure 41(a)(1)(A)(ii) and 2) after each Plaintiff has provided QCI's counsel with an executed W-9 form. The Settlement Amount shall be divided and paid as follows:

    a.    QCI shall pay to Jeremy Ryan Card the gross amount of nineteen thousand two hundred eighteen dollars and twenty cents ($19,218.20), less applicable taxes and withholdings, as alleged unpaid back wages, for which a form W-2 will issue at the appropriate time;

    b.    QCI shall pay to Emanuel Guerrero the gross amount of six hundred thirteen dollars and thirty-five cents ($613.35), less applicable taxes and withholdings, as alleged unpaid back wages, for which a form W-2 will issue at the appropriate time;

    c.    QCI shall pay to Gabriel Gonzalez the gross amount of six hundred thirteen dollars and thirty-five cents ($613.35), less applicable taxes and withholdings, as alleged unpaid back wages, for which a form W-2 will issue at the appropriate time;

    d.    One check payable to Gregg M. Rosenberg, P.C. in the amount of fourteen thousand five hundred and fifty-five dollars and ten cents ($14,555.10), in satisfaction of Plaintiffs' claims for attorneys' fees and costs in connection with the FLSA Claims. Counsel for Plaintiffs will issue a W9 to Defense counsel.

3.    **Dismissal and Covenant Not to Sue**. Upon Court approval of this Agreement, Plaintiffs understands and agree that the FLSA Claims against QCI pending in the Lawsuit will be dismissed with prejudice with each party to bear their own costs. The Parties agree to file a stipulated dismissal with prejudice upon the Court's approval of this Agreement and QCI's

payment of the Settlement Amount as described above. Plaintiffs further covenant and agree not to reinstate or reassert any FLSA Claims or Lawsuit, and agree to dismiss with prejudice or withdraw any new or pending claims, charges, complaints, or demands, and agrees not to assert any other claims, charges, complaints, or demands previously pending or currently pending against any of the Releasees described in Paragraph 5. Plaintiffs waive any right to recover monetary damages from any of the Releasees and further agree that they will not opt-in to any claim against any of the Releasees brought under 29 U.S.C. § 216(b) by any other party and, if Plaintiffs are within the scope of a class action against any of the Releasees brought by any other party under Federal Rule of Civil Procedure 23, they will opt-out of such class action.

4. **Consideration for Release of Non-FLSA Claims**. For and in consideration of the mutual releases described herein, Plaintiffs and Defendant hereby irrevocably an unconditionally release and forever discharge each other, with respect to any and all claims and causes of action of any nature, both past and present, known and unknown, foreseen and unforeseen, at law or in equity, which Plaintiffs or Defendant have or which could be asserted on their behalf resulting from or related to any act or omission of Plaintiffs or Defendant of any kind occurring on or before the date of the execution of this Agreement. The Parties understand and agree that this Release includes, but is not limited to, all claims and causes of action arising under any federal, state, or local law, regulation, or ordinance, as well as tort and/or common law claims such as conversion, negligence or breach of contract. The Parties understand they are not entitled to any additional consideration for their release of non-FLSA claims against each other beyond the consideration discussed in this paragraph and exchanged pursuant to this Agreement.

5.     **General Release**. In consideration of the promises set forth herein, and as a material inducement for QCI to enter into this Agreement, Plaintiffs, for themselves and for all and each of their respective assigns, agents, attorneys, representatives, spouses, heirs, executors and administrators, do covenant not to sue, and do fully remise, release and forever discharge QCI, Michael Lee Needham, Needham Communications and their predecessors, owners and successor firms, parent companies, divisions, businesses, partnerships, joint ventures, subsidiaries, affiliates, and each such entity's current and former officers, directors, trustees, conservators, principals, members, partners, shareholders, employees (including Tarin Williger), contractors, shareholders, insurers, plan administrators, attorneys and agents, and all and each of their respective assigns, agents, representatives, spouses, heirs, executors and administrators (hereinafter referred to as the "Releasees"), of and from any and all actions, causes of actions, liabilities, suits, debts, sums of money, accounts, bonds, bills, covenants, contracts, controversies, agreements, EEOC charges, promises, damages, judgments, claims and demands whatsoever, under contract, tort or quasi-contract principles, state, local or federal law, at law or in equity, whether based on federal, state or local statute, common law, or any other source, whether known or unknown, asserted or unasserted, suspected or unsuspected, including but not limited to any and all claims that were alleged or could have been alleged by Plaintiffs in the Lawsuit, any and all claims for breach of contract, defamation, wrongful termination, retaliation, intentional infliction of emotional distress, fraud, any and all claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq., as amended by, without limitation, the Portal to Portal Act of 1947, 29 U.S.C. §§ 251 et seq.; the Family Medical Leave Act of 1993, as amended; the Texas Commission on Human Rights Act, Title VII of the Civil Rights Act of 1964, as amended by, without limitation, the Pregnancy Discrimination Act; the Equal Pay Act;

the Americans with Disabilities Act of 1990, as amended; any other federal, state or local laws or regulations prohibiting employment discrimination or pertaining to employment, any and all claims for wages, commissions, bonuses, money, overtime, severance pay, sick leave, holiday pay, vacation pay, life insurance, group medical insurance, stock grants, stock options, retirement plan contributions, or any other fringe benefit of QCI, violations of state and/or federal wage and hour laws, or workers' compensation disability claims.

    a.    Plaintiffs expressly acknowledge that this Agreement may be pled as a complete defense and will fully and finally bar any and all claims, known or unknown, against any or all of the Releasees based on any matter, act, omission, transaction, occurrence, or event that has occurred or is alleged to have occurred up to the date of this Agreement.

    b.    Plaintiffs acknowledge that this general release extends also to claims that they do not know or suspect to exist in their favor at the time of executing this Agreement and which, if known by them, might have materially affected their decision to execute this Agreement. Plaintiffs hereby knowingly and voluntarily waive and relinquish all rights and benefits which may exist under applicable law with respect to such general release provisions. Plaintiffs agree to dismiss any pending lawsuits or charges filed with any court or administrative agency whether known or unknown to QCI.

6.    **<u>Waiver of Reinstatement</u>**. For and in consideration of the promises and other consideration described in this Agreement, and as a further material inducement for QCI to enter into this Agreement, Plaintiffs warrant, covenant, and agree that they will not knowingly apply for, seek, or accept employment or any contractual relationship with QCI at any time in the future, and Plaintiffs agree not to knowingly accept employment with any employer that

would require them to work at any facility owned or controlled, in whole or in part, by QCI. Plaintiffs acknowledge that this Agreement will constitute a complete and final reason for any subsequent denial of employment or any contractual relationship, and that this Agreement may be offered as a complete defense to any lawsuit, charge, claim, or cause of action for such denial.

7.      **Non-Interference**. For and in consideration of the payments, promises, and other consideration described in this Agreement, Plaintiffs agree not to contact current and former employees of QCI with respect to the Lawsuit or the FLSA Claims, and agree not to discuss the Lawsuit or the FLSA Claims with current or former employees of QCI. Plaintiffs also agree not to voluntarily provide testimony or evidence regarding this Lawsuit or with respect to QCI in any interview, conversation, investigation, hearing or trial, unless required to do so by court order, and then only after giving written notice to QCI.

8.      **No Oral Modification**.  This Agreement may not be modified orally.

9.      **No Oral Waiver**.  No breach of any provision hereof can be waived by any undersigned party unless such waiver is in writing and signed by an authorized representative of the waiving party. Waiver of any one breach by an undersigned party will not be deemed to be a waiver of any other breach of the same or any other provision hereof.

10.     **No Assignment and INDEMNITY**. Plaintiffs represents and warrant that they have not assigned to any other person, and that no other person is entitled to assert on their behalf, any claim against any of the Releasees to this Agreement based on matters released in this Agreement. **PLAINTIFFS SHALL INDEMNIFY AND HOLD QCI HARMLESS FOR ANY LIABILITY, COSTS, OR EXPENSES (INCLUDING ANY PENALTIES AND/OR ATTORNEYS' FEES) INCURRED IN THE DEFENSE OR AS A RESULT OF ANY**

**SUCH CLAIMS**.

11.     **Indemnifications.**  Plaintiffs and Releasees agree and acknowledge that Releasees have provided no advice or counseling and have made no representations regarding the tax reporting or tax consequences of the consideration being paid.  Plaintiffs agree and acknowledge that the Releasees will not make any payments of any kind, including the Settlement Payments, unless and until IRS Forms W-9 and/or W-4 are properly completed and executed and such forms are received by counsel for QCI.  Plaintiffs agree that they will be solely responsible for any taxes that they owe as a result of the Settlement Payments.  Likewise, Releasees agree that they will be solely responsible for any taxes that they owe as a result of the Settlement Payments.  To avoid all doubt, the Parties agree that they are each responsible for their own tax obligations and are in no way responsible for the other's tax obligations.  Plaintiffs agree to pay any and all federal, state, or local taxes, if any, which they may be obligated to pay in accordance with IRS, state, and/or local rules and regulations due to the sums being paid under this Agreement.

12.     **Construction**.  The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties. This Agreement is the result of arms-length negotiations between the Parties with full participation of their counsel. The Agreement reflects substantive participation of all Parties. The paragraph headings contained in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement. If any provision of this Agreement is declared or determined by any court to be illegal or invalid, that part shall be excluded from the Agreement, but the validity of the remaining parts, terms, or provisions shall not be affected.

13.     **Voluntary Agreement**. Each of the undersigned Parties has been represented or has been given the opportunity to be represented by counsel of his/its choice in connection with the

negotiations and execution of this Agreement. Each has relied solely upon his/its own judgment, belief and knowledge, and/or the advice and recommendation of his/its own independently selected counsel, concerning the nature, extent and duration of his/its rights and claims, and that he/it has not been influenced to any extent whatsoever in executing this document by any representations or statements except those expressly contained or referred to herein. Each party executes this Agreement voluntarily and of his/its own free will, without coercion or duress.

14.     **Breach of the Agreement**.  The parties agree that if either party is found by this Court or any court to be in breach of this Agreement, such breaching party shall pay the other party's attorneys' fees and costs in enforcing this Agreement, in addition to any remedies at law or in equity that are available.

15.     **Governing Law**.  This Agreement shall be governed, construed, and interpreted under and in accordance with the laws of the State of Texas without regard to conflicts of law principles.

16.     **Entire Agreement**. This Agreement constitutes the entire understanding and agreement between the Parties with respect to the subject matter covered by this Agreement. This Agreement supersedes any previous settlement agreement entered into by the Parties.

17.     **Court Approval**.  The Parties understand and acknowledge the Parties will seek approval by the United States District Court for the Southern District of Texas, Honorable Judge Lynn Hughes by filing a joint and agreed motion for approval of settlement agreement within seven (7) days after full execution of this Agreement.  The Parties agree to take all reasonable and necessary steps to seek approval of their Agreement by the Court.  Additionally, Plaintiffs agree to file an agreed stipulation of the dismissal with prejudice of Plaintiffs' claims

against Quality Cable Installers, LLC, Needham Communications and Michael Lee Needham pursuant to Federal Rule Civil Procedure 41(a)(1)(A)(ii) no later than two (2) days after the Court signs an order approving the settlement of Plaintiffs' FLSA claims. In the event the Court does not approve of this Agreement, this Agreement will be null and void solely with regard to Plaintiffs' FLSA claims. The remaining release of claims, specifically and including, the release of non-FLSA claims shall constitute an enforceable release of every other possible kind of claim.

18.     **Effective Date**.    This Agreement shall become effective and enforceable against Plaintiffs upon the latter of the date of the Court's approval of this Agreement or upon Plaintiffs full execution of this Agreement.

THE UNDERSIGNED HAVE CAREFULLY READ THIS "SETTLEMENT AGREEMENT AND GENERAL RELEASE"; THEY KNOW AND UNDERSTAND ITS CONTENTS; THEY FREELY AND VOLUNTARILY AGREE TO ABIDE BY ITS TERMS; AND THEY HAVE NOT BEEN COERCED INTO SIGNING THIS AGREEMENT.

9-26-18
Date

Jeremy Ryan Card

Sworn to and subscribed to me, this 26 Day of September, 2018.

Vicki Tate
Notary Public

VICKI TATE
Notary ID # 129201317
My Commission Expires
November 12, 2020

My Commission Expires: 11-12-2020

_____
Date

_____
Gabriel Gonzalez

Sworn to and subscribed to me, this ___
Day of _____, 2018.

_____
Notary Public

against Quality Cable Installers, LLC, Needham Communications and Michael Lee Needham pursuant to Federal Rule Civil Procedure 41(a)(1)(A)(ii) no later than two (2) days after the Court signs an order approving the settlement of Plaintiffs' FLSA claims. In the event the Court does not approve of this Agreement, this Agreement will be null and void solely with regard to Plaintiffs' FLSA claims. The remaining release of claims, specifically and including, the release of non-FLSA claims shall constitute an enforceable release of every other possible kind of claim.

18.     **Effective Date**. This Agreement shall become effective and enforceable against Plaintiffs upon the latter of the date of the Court's approval of this Agreement or upon Plaintiffs full execution of this Agreement.

THE UNDERSIGNED HAVE CAREFULLY READ THIS "SETTLEMENT AGREEMENT AND GENERAL RELEASE"; THEY KNOW AND UNDERSTAND ITS CONTENTS; THEY FREELY AND VOLUNTARILY AGREE TO ABIDE BY ITS TERMS; AND THEY HAVE NOT BEEN COERCED INTO SIGNING THIS AGREEMENT.

_____                    _____
Date                                                Jeremy Ryan Card

Sworn to and subscribed to me, this ___
Day of _____, 2018.

_____
Notary Public

My Commission Expires: _____

9/28/18                                             /s/ Gabriel Gonzalez
_____                    _____
Date                                                Gabriel Gonzalez

Sworn to and subscribed to me, this
Day of September

/s/ Esteban Martinez
_____
Notary Public

[Notary Seal: ESTEBAN MARTINEZ, 128244110219, NOTARY PUBLIC, STATE OF TEXAS, EXPIRES DEC. 19, 2018]

Page **11** of **12**

My Commission Expires: _____

| | |
|---|---|
| 10-04-18 | *(signature)* |
| Date | Emanuel Guerrero |

Sworn to and subscribed to me, this 5th
Day of October, 2018.

*Kristina M Blanco*
Notary Public

My Commission Expires: 10-6-19

*[Notary Seal: KRISTINA M BLANCO, Commission # 11217417, My Commission Expires October 6, 2019, NOTARY PUBLIC STATE OF TEXAS]*

_____   _____
Date                                                              Quality Cable Installers, LLC.

Sworn to and subscribed to me, this \_\_\_
Day of _____, 2018.

_____
Notary Public

My Commission Expires: _____

**[The rest of this page is left intentionally blank]**

My Commission Expires: _____

_____  
Date

_____  
Emanuel Guerrero

Sworn to and subscribed to me, this ___  
Day of _____, 2018.

_____  
Notary Public

My Commission Expires: _____

10/11/18  
_____  
Date

_____  
Quality Cable Installers, LLC.

Sworn to and subscribed to me, this **11TH**  
Day of **OCTOBER**, 2018.

*Perla Lansangan*  
Notary Public

My Commission Expires: **6/27/2021**

PERLA LANSANGAN  
My Notary ID # 131187259  
Expires June 27, 2021

**[The rest of this page is left intentionally blank]**